**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| WANDA BUSBY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-1025 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 6, 8 |
| | : | | |
| CAPITAL ONE, N.A. *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

Granting Capital One's Motion to Dismiss; Granting Prensky's
Motion to Partially Dismiss

## I. INTRODUCTION

The *pro se* plaintiff, Wanda Busby, has asserted a variety of statutory and common law claims against the defendants, Capital One, N.A. ("Capital One") and attorney David Prensky ("Prensky"), in connection with a promissory note and deed of trust executed by the plaintiff in 1996. Capital One has moved to dismiss all of the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Prensky has also filed a motion pursuant to Rule 12(b)(6) to dismiss all but two of the claims asserted against him. As discussed below, the plaintiff has failed to allege plausible claims for relief with respect to the claims addressed in the defendants' motions. The court therefore grants the defendants' motions.

## II. FACTUAL & PROCEDURAL BACKGROUND

In December 1996, the plaintiff purchased a property located in Northwest Washington, D.C. Am. Compl. ¶¶ 7, 19. To finance the purchase, the plaintiff obtained a $207,000 loan from the B.F. Saul Mortgage Company ("B.F. Saul"). *Id.* ¶ 19 & Ex. B. The loan was documented by

a promissory note ("the Note"), *id.* ¶ 19; Capital One's Mot., Ex. A, and secured by a deed of trust ("the Deed of Trust"), Am. Compl., Ex. B. Both instruments were filed with the D.C. Recorder of Deeds on December 24, 1996. Am. Compl. ¶ 19. B.F. Saul subsequently assigned its rights under the Note to Chevy Chase Bank, F.S.B. ("Chevy Chase"). Capital One's Mot., Ex. A.

By early April 2010, the plaintiff had fallen three months behind on her loan payments. Am. Compl. ¶ 32. The plaintiff "contacted Capital One, the apparent loan servicer, in order to bring her payments up to date." *Id.* During a conversation with a Capital One representative, the plaintiff learned that there was, according to Capital One, "a sizable underpayment of her escrow account." *Id.* The plaintiff formally disputed these amounts and offered to pay all overdue amounts of principal and interest pending resolution of the escrow dispute. *Id.* ¶ 34. Capital One, however, rejected this offer. *Id.*

On April 12, 2010, the defendants sent the plaintiff a notice of foreclosure sale ("the Notice"), advising her that she owed $168,842.38 on her note and that her property would be sold at a foreclosure sale on May 19, 2010. Am. Compl., Ex. C. The Notice identified the holder of the note as "Capital One NA." *Id.* The Notice further stated that in the event the plaintiff wished to stop the foreclosure sale, she should contact Prensky, *id.*, who had purportedly been appointed to act as trustee pursuant to a deed of appointment of substitute trustee ("the Deed of Appointment") executed on December 1, 2009, Am. Compl., Ex. B. Both the Notice and the Deed of Appointment were filed with the D.C. Recorder of Deeds on April 14, 2010. Am. Compl. ¶ 47.

On May 18, 2010, the plaintiff commenced this action against the defendants in the Superior Court of the District of Columbia. *See generally* Compl. After being served with the

complaint, Prensky informed the plaintiff that Capital One had agreed to cancel the foreclosure sale scheduled for May 19, 2010. Am. Compl. ¶¶ 93-94. Prensky, however, left open the possibility that the foreclosure sale would be rescheduled at a later date. *Id.* ¶¶ 95-96.

The plaintiff filed an amended complaint in the Superior Court on June 9, 2010. *See generally id.* In the amended complaint, the plaintiff alleges that the Notice was fraudulent and ineffective because it misrepresented Capital One as the holder of the note, when, in reality, Capital One was acting, at best, as the loan servicer. *Id.* ¶¶ 24, 40-45, 49-52, 98-102. The plaintiff contends that under both the terms of the Deed of Trust and as D.C. law, a loan servicer lacks the authority to commence foreclosure proceedings against a borrower like the plaintiff. *Id.* The plaintiff also alleges that in the Notice, the defendants misrepresented the amounts owed by the plaintiff. *Id.* ¶¶ 32-35; 123-24.

In addition, the plaintiff claims that the Deed of Appointment is fraudulent and ineffective. *Id.* ¶¶ 25, 47-48, 54-79. The plaintiff asserts that there are errors in the notarization on the form, *id.* ¶¶ 58-68, and that although the Deed of Appointment was executed by an individual on behalf of Chevy Chase on December 1, 2009, Chevy Chase had merged with Capital One four months earlier and therefore did not exist as of the date the Deed of Appointment was executed, *id.* ¶¶ 70-75.

In her ten-count amended complaint, the plaintiff asserts a variety of statutory and common law[1] claims against the defendants. *Id.* ¶¶ 113-234. Specifically, the amended complaint contains the following claims: fraud (Count I); breach of fiduciary duty (Count II); violations of the D.C. Interest Rate Ceiling Amendment Act ("D.C. Usury Statute"), D.C. CODE § 28-3312, and the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3904

---

[1] There is no dispute that D.C. law governs the plaintiff's common law claims. *See generally* Capital One's Mot. to Dismiss; Prensky's Mot. to Dismiss; Pl.'s Opp'n.

(Count III); conversion (Count IV); violations of the Racketeer Influenced and Corrupt

Organization Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (Counts V-VII); negligence (Count VIII);

unconscionability, bad faith and unfair dealing (Count IX); and "emotional distress" (Count X)

*Id.* Aside from the breach of fiduciary duty claim (Count II), which is asserted only against

Prensky, *id.* ¶¶ 116-19, and the D.C. Usury Statute claim (Count III), which is asserted only

against Capital One, *id.* ¶¶ 123, each claim is asserted against both defendants.

The defendants removed this action to this court on June 17, 2010. *See generally* Notice

of Removal. On July 16, 2010, Capital One and Prensky separately filed motions to dismiss the

amended complaint pursuant to Rule 12(b)(6). *See generally* Capital One's Mot.; Prensky's

Mot. Capital One seeks the dismissal of all the claims asserted against it. *See generally* Capital

One's Mot. Prensky has moved to dismiss all of the claims against him except the breach of

fiduciary duty and negligence claims. *See generally* Prensky's Mot. The plaintiff filed an

omnibus opposition to both motions on February 14, 2011,[2] *see generally* Pl.'s Opp'n, and the

defendants filed separate replies on February 25, 2011, *see generally* Capital One's Reply;

Prensky's Reply.


### III.  ANALYSIS

#### A.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

---

[2]     Briefing on the defendants' motions to dismiss was stayed pending resolution of the plaintiff's
        motion to remand this case to the Superior Court of the District of Columbia. Minute Order
        (Sept. 10, 2010). The court ultimately denied the plaintiff's motion. *See generally* Mem. Op.
        (Jan. 6, 2011).

it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pretrial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002),

or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d

134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing

courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of

facts in support of his claim [] would entitle him to relief").  A claim is facially plausible when

the pleaded factual content "allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at

556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at

556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual

allegations – including mixed questions of law and fact – as true and draw all reasonable

inferences therefrom in the plaintiff's favor.  *Holy Land Found. for Relief & Dev. v. Ashcroft*,

333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### B. The Court Grants the Defendants' Motions to Dismiss the Amended Complaint

### 1. Count I: Fraud

The plaintiff appears to base her fraud claims on Capital One's alleged misrepresentation that it was the holder of the note and that it had the authority to institute foreclosure proceedings against the plaintiff, Capital One's alleged misrepresentations regarding the amounts owed by the plaintiff and the alleged misrepresentations by Capital One and Prensky that Prensky was authorized to act as trustee on behalf of the note holder in foreclosure proceedings. *See* Am. Compl. ¶¶ 24-25, 40-79, 98-102, 123-24. According to the plaintiff, these misrepresentations appear in the Notice and the Deed of Appointment. *See id.*

Both Capital One and Prensky contend that the plaintiff has failed to state a viable claim for fraud because she has not alleged that she relied on these allegedly fraudulent representations to her detriment, as required to state a claim for fraud under D.C. law.[3] Capital One's Mot. at 8-9; Prensky's Mot. at 5-6. Capital One also argues that that the plaintiff has alleged no facts to support her contention that Capital One misrepresented the amounts owed by the plaintiff. Capital One's Mot. at 9-12. The plaintiff maintains that she has properly stated a claim for fraud,

---

[3]     Capital One also argues that the allegedly fraudulent misrepresentations on which the plaintiff bases her claim are not material. Capital One's Mot. at 9-12. Because the court concludes that the plaintiff has failed to adequately plead detrimental reliance, it does not reach this alternative argument.

asserting that the amended complaint addresses the essential elements of a fraud claim under

D.C. law.  Pl.'s Opp'n at 16-22.  In addition, the plaintiff contends that her amended complaint

contains a claim of conspiracy to commit fraud, which is properly pled and not addressed in the

defendants' motions.  *Id.* at 13-14.

Under D.C. law, "[t]he essential elements of common law fraud are: (1) a false

representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with

the intent to deceive, and (5) action is taken in reliance upon the representation." *Fort Lincoln

Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1074 n.22 (D.C. 2008)

(quoting *Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977)).  To prevail on such a claim, "the

plaintiff must also have suffered some injury as a consequence of his reliance on the

misrepresentation." *Chedick v. Nash*, 151 F.3d 1077, 1081 (D.C. Cir. 1998) (citing *Dresser v.

Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983)).

Furthermore, Federal Rule of Civil Procedure 9(b) requires that a claimant state with

particularity the circumstances constituting fraud.  FED. R. CIV. P. 9(b).  The claimant must plead

with particularity matters such as the time, place and content of the false misrepresentations, the

misrepresented fact and what the opponent retained or the claimant lost as a consequence of the

alleged fraud.  *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256

(D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns, Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).

This heightened pleading standard "discourage[s] the initiation of suits brought solely for their

nuisance value, and safeguards potential defendants from frivolous accusations of moral

turpitude." *Id.* (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1386 (D.C. Cir.

1981)).  Furthermore, "because 'fraud' encompasses a wide variety of activities, the

requirements of Rule 9(b) guarantee all defendants sufficient information to allow for

preparation of a response." *Id.*

The plaintiff first suggests that the reliance element needed to establish her fraud claim is satisfied by her allegation that the D.C. Recorder of Deeds and other third parties relied on the misrepresentations made in the Notice and Deed of Appointment. Pl.'s Opp'n at 17. Yet under D.C. law, "[a] plaintiff may recover for a defendant's fraudulent statement only if *the plaintiff* took some action in reliance on that statement." *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22-23 (D.C. Cir. 2008) (affirming the dismissal of the plaintiff's fraud claim because rather than suggesting its own reliance, the plaintiff alleged only that the United States Patent and Trademark office relied on the defendant's alleged misrepresentation (citing *Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1237-38 (D.C. 2005) (emphasis added))). Thus, the plaintiff's allegations concerning actions taken by the D.C. Recorder of Deeds or any other third parties cannot, standing alone, satisfy the detrimental reliance element required for fraud claims under D.C. law.

The plaintiff also contends that she relied to her detriment on the defendants' fraudulent statements by consulting legal counsel. Pl.'s Opp'n at 17. This allegation, however, does not appear in the amended complaint. *See generally* Am. Compl.; *see also Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010) (observing that a plaintiff "may not amend her complaint by the briefs in opposition to a motion to dismiss" (citing *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 107 (D.D.C. 2004))). Furthermore, even if this allegation were considered part of the plaintiff's pleadings, it has not been pled with the requisite specificity, as the plaintiff has offered no indication of what steps she took to consult with legal counsel or what costs she incurred as a result. *See* Pl.'s Opp'n at 17. Finally, even if the plaintiff had alleged that she had offered some factual allegation to substantiate her claim of loss, it is far from clear that the cost

of legal services can constitute detrimental reliance for purposes of fraud, given the American Rule against fee shifting. *See Oliver T. Carr Co. v. United Tech. Commc'n Co.*, 604 A.2d 881, 883 (D.C. 1992) ("[T]his jurisdiction follows 'the American Rule under which . . . every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions' such as the conventional 'bad faith' exception." (internal quotation marks omitted) (quoting *Dalo v. Kivitz*, 596 A.2d 35, 37, 39 (D.C. 1991)); *see also Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 94, 121 (D.D.C. 2010) (holding that a party asserting fraud "must provide legal authority in support of his apparent claim that he is entitled to attorney's fees and costs"). Accordingly, the plaintiff's assertion in her opposition that she consulted legal counsel as a result of the defendants' fraudulent representations does not satisfy the detrimental reliance requirement.

Lastly, the plaintiff contends that she relied on the defendants' misstatements regarding escrow amounts owed and other penalties due "by paying some of the amounts demanded." Pl.'s Opp'n at 17 (citing Am. Compl. ¶¶ 125-26, 141, 182, 184). This allegation, however, falls well short of Rule 9(b)'s heightened pleading standard, as the plaintiff does not offer any indication of when she paid these fees or what amounts she paid. *See* Am. Compl. ¶¶ 125-26, 141, 182-84. In fact, the amended complaint indicates that after the defendants filed the Notice and Deed of Appointment, which contained the allegedly fraudulent statements at issue, the plaintiff did not make any additional payments to Capital One. *See id.* ¶¶ 32-35. Rather, it appears that when the plaintiff states that she "pa[id] some of the amounts demanded," Pl.'s Opp'n at 17, she is referring to the fact that *before* the defendants' filed the Notice and Deed of Appointment, she had made payments toward her loan that Capital One had applied to her purported escrow

balance and other penalty charges, *see* Am. Compl. ¶ 182 ("Plaintiff's payments, upon information and belief, [and] the payments of other D.C. homeowners, were applied to overcharges, with Capital One misappropriating the amounts overcharged.").  These payments, however, were made before the defendants' alleged misrepresentations and plainly were not taken in reliance on them.[4]  Thus, the plaintiff's allegation regarding the payment of erroneous charges does not support her claim of detrimental reliance on the defendants' allegedly fraudulent statements.

The plaintiff's failure to plead that she took any steps in reasonable reliance on the defendants' fraudulent statements warrants dismissal of her fraud claim.  *See Aktieselskabet AF 21. Nov. 2001*, 525 F.3d at 22-23.  Nonetheless, the plaintiff asserts that such a finding does not preclude her from proceeding with a claim of conspiracy to commit fraud.  Pl.'s Opp'n at 13-14; *see also* Am. Compl. ¶ 114.  As a threshold matter, however, it is hardly clear that a plaintiff can proceed with a claim for conspiracy to commit fraud in the absence of a viable underlying fraud claim.  *See Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007) (observing that civil conspiracy "is not an independent tort but only a means for establishing vicarious liability for an underlying tort" (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000))); *Ali v. Mid-Atlantic Settlement Servs., Inc.*, 640 F. Supp. 2d 1, 9 (D.D.C. 2009) (holding that the entry of summary judgment for the defendant on the plaintiff's fraud claim required dismissal of the plaintiff's conspiracy to commit fraud claim because "civil conspiracy depends on performance

---

[4]     Furthermore, the amended complaint contains no indication of why the escrow charges and other penalty fees assessed by Capital One were erroneous.  *See generally* Am. Compl.  The absence of such allegations renders the plaintiff's fraud claim deficient under Rule 9(b).  *See Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 458 (D.N.J. 2009) (concluding that the plaintiff failed to state a fraud claim based on allegedly unwarranted "Late Charges" and other charges demanded by the defendant because the plaintiff had offered no explanation for its assertion that these charges were unwarranted).

of some underlying tortious act" (quoting *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000))); *but see Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 498 n.27 (D.D.C. 1994) ("Often when a claim for fraud fails for lack of the requisite elements, courts will search to find evidence of a conspiracy to defraud." (citing *Higgs v. Higgs*, 472 A.2d 875, 877 (D.C. 1994))).

At any rate, in order to state a civil conspiracy claim under D.C. law, the plaintiff must allege "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of parties to the agreement, and in furtherance of the common scheme." *Hill*, 933 A.2d at 334. Here, the plaintiff has offered no factual allegations whatsoever indicating the existence of an agreement between Capital One and Prensky. *See generally* Am. Compl. Rather, the plaintiff's conspiracy claim is grounded on the bare, conclusory assertion that the defendants "conspired to commit, and did commit fraud, on which Plaintiff relied to her detriment." *Id.* ¶ 114. Such an allegation, unadorned by any substantiating factual allegations, is insufficient to state a viable conspiracy claim. *See Kissi v. Panzer*, 664 F. Supp. 2d 120, 126 (D.D.C. 2009) (holding that the plaintiff's allegation that the defendants "conspired to rip off him and his spouse" were insufficient to state a claim for conspiracy to commit fraud); *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (concluding that the plaintiff's allegation that the defendants "agreed among themselves" to engage in tortious conduct was insufficient to state a viable civil conspiracy claim).

Accordingly, the plaintiff has failed to state a cognizable claim for conspiracy to commit fraud, just as she failed to state a cognizable claim for fraud. The court therefore grants the defendants' motions to dismiss these claims.

## 2. Count III: D.C. Statutory Claims

### a. The Plaintiff's Claim Under the D.C. Usury Statute

The plaintiff alleges that Capital One violated the D.C. Usury Statute "by both misrepresenting material facts and failing to state material facts." Am. Compl. ¶122. Although the plaintiff does not specify the misrepresentations and omissions on which she bases this claim, *see id.*, it appears that the plaintiff rests her D.C. Usury Statute claim on the same allegedly fraudulent statements underlying her fraud claim, *see id.*¶¶ 24-25, 40-79, 98-102, 120-29.

Capital One contends that the plaintiff has failed to state a claim under the D.C. Usury Statute because the statute applies only to "lenders" and not loan servicers. Capital One's Mot. at 12-13. Capital One further contends that to the extent the plaintiff premises this claim on allegedly unwarranted escrow fees and other charges demanded by Capital One, the plaintiff has offered no explanation for why these fees were unauthorized, overstated or otherwise improper. *Id.* at 13. The plaintiff responds that Capital One constitutes a "lender" for purposes of the D.C. Usury Statute and that Capital One violated the statute by making material misrepresentations to the plaintiff. Pl.'s Opp'n at 23-24.

The D.C. Usury Statute provides that "[i]t shall be a violation of this chapter for any lender to" engage in certain specified conduct, including "misrepresent[ing] as to a material fact" and "fail[ing] to state a material fact." D.C. CODE § 28-3312. By its terms, the statute applies only to "lenders." *See id.*; *see also Young v. 1st Am. Fin. Servs.*, 992 F. Supp. 440, 444 & n.7 (D.D.C. 1998) (dismissing the plaintiffs' claim under the D.C. Usury Statute because the statute applies only to lenders and not brokers like the defendant, notwithstanding the plaintiffs' allegation that the defendant fraudulently led them to believe that it was acting as the lender rather than the broker).

In the amended complaint, the plaintiff repeatedly asserts that Capital One was not the lender in the underlying loan transaction. *See, e.g.*, Am. Compl. ¶¶ 32, 97. Indeed, the plaintiff's fraud claim is premised in significant part on the assertion that Capital One falsely represented itself as the holder of the Note. *See supra* Part III.B.1. Although the plaintiff asserts in her opposition brief that Capital One functioned as a "lender" for purposes of the D.C. Usury Statute, she provides neither any authority nor any cogent argument in support of this assertion. *See* Pl.'s Opp'n at 23-24. Accordingly, the court dismisses the plaintiff's claim asserting violations of D.C. Usury Statute.

### b. The Plaintiff's CPPA Claim

The plaintiff alleges that the defendants violated the CPPA by misrepresenting material facts in connection with the plaintiff's loan obligations. Am. Compl. ¶¶ 121, 123. Again, this claim appears to be based on the same alleged misrepresentations underlying the plaintiff's fraud claim. *See id.* ¶¶ 24-25, 40-79, 98-102, 120-29.

Both Capital One and Prensky contend that the plaintiff's CPPA claim fails because the plaintiff was not a "consumer" of goods or services provided by either defendant.[5] Capital One's Mot. at 14-15; Prensky's Mot. at 6-7. The plaintiff maintains that the CPPA gives rise to a claim against Capital One because the statute applies to mortgage transactions and Capital One held itself out to be the mortgagee. Pl.'s Opp'n at 25-26. The plaintiff also argues that she has stated a CPPA claim against Prensky – despite the fact that Prensky did not provide any legal services to her – because he engaged in unethical conduct by falsely holding himself out as the trustee under the Deed of Appointment. *Id.* at 27-28.

---

[5]    Although Capital One has also pointed out a number of additional purported deficiencies in the plaintiff's CPPA claim, Capital One's Mot. at 15-16, the court does not reach these alternative arguments because the amended complaint fails to allege the existence of a consumer-merchant relationship.

The CPPA prohibits a wide variety of deceptive trade practices perpetrated against consumers. D.C. CODE § 28-3904. The practices prohibited by the statute include misrepresenting the existence of a sponsorship or affiliation, misrepresenting a material fact which has the tendency to mislead and failing to state a material fact which has the tendency to mislead. *Id.* § 28-3904(b), (e), (f). "The purpose of the CPPA is to protect consumers from a broad spectrum of unscrupulous practices by merchants, therefore the statute should be read broadly to assure that the purposes are carried out." *Modern Mgmt. Co. v. Wilson*, 997 A.2d 37, 62 (D.C. 2010).

Despite its broad reach, the CPPA applies only to consumer-merchant relationships. *Snowder v. Dist. of Columbia*, 949 A.2d 590, 599 (D.C. 2008) (observing that the CPPA "was designed to police trade practices arising only out of consumer-merchant relationships" (quoting *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. 1981))). The statute defines a "consumer" as "a person who does or would purchase, lease (from), or receive consumer goods or services . . . or a person who does or would provide the economic demand for a trade practice." *Id.* § 28-3901(a)(2). A "merchant" is defined as "a person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice." *Id.* § 28-3901(a)(3).

Here, the amended complaint contains no factual allegations whatsoever indicating the existence of a consumer-merchant relationship between the plaintiff and either defendant. *See generally* Am. Compl. The plaintiff has identified no goods or services she purchased or received from Capital One or Prensky. *See generally id.*; *see also Ali v. Tolbert*, 2011 WL 691364, at *5 (D.C. Cir. Mar. 1, 2011) (holding that an individual who facilitated a residential

property transaction was not a "merchant" for CPPA purposes because there was "no evidence that he supplied, or held himself out as a person who would supply any goods or services to the purchaser in connection with her ownership or sale of the house"). Although the plaintiff notes that the CPPA applies to lenders in residential mortgage transactions, *see Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 50-53 (D.D.C. 2010), as previously discussed, the plaintiff has alleged here that Capital One was not the lender and that its role in the lender-borrower relationship was limited to serving as the loan servicer, at best, *see* Am. Compl. ¶¶ 32, 97. Accordingly, the court dismisses the plaintiff's CPPA claim against both defendants.

### 3. Count IV: Conversion

The plaintiff alleges that the defendants "engaged in conversion by asserting ownership over the Note and [Deed of Trust], including, but not limited to, the power of sale provisions within the [Deed of Trust]."[6] Am. Compl. ¶ 131. The defendants argue that the plaintiff's allegations do not give rise to a plausible conversion claim because, among other reasons, the plaintiff is not the owner of allegedly converted property and there has been no dispossession of the plaintiff's property rights. Capital One's Mot. at 17-18; Prensky Reply at 8. The plaintiff maintains that she has asserted a viable claim of conversion, contending that the misappropriation of notes, titles and deeds can give rise to a claim of conversion and that even if she is not the owner of the Note or the Deed of Trust, she has an interest in those instruments. Pl.'s Opp'n at 28-33.

Under D.C. law, the elements of conversion are "(1) an unlawful exercise, (2) of

---

[6]    According to the plaintiff, "Capital One's conversion scheme began when it caused its employees to assert falsely that [Chevy Chase], a defunct corporation, owned the Note and [Deed of Trust]" and then later, "in its own right, asserted ownership over the Note and the [Deed of Trust]." Am Compl. ¶ 132. The plaintiff also alleges that "[b]y filing the Fraudulent Notice . . . and Forged Deed [of Appointment], Prensky also asserted ownership over the Property under the [Deed of Trust]." *Id.* ¶ 133.

ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto.'" *O'Callaghan v. Dist. of Columbia*, 741 F. Supp. 273, 279 (D.D.C. 1990) (citing *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C. 1989)).  According to the plaintiff, her conversion claim is grounded on the defendants' misappropriation of her "beneficial interest in both the Property and the Deed of Trust."  Pl.'s Opp'n at 30; *see also* Am. Compl. ¶¶ 131-33.  The plaintiff is mistaken.  The Deed of Trust is a security instrument given by the plaintiff for the benefit of the lender.  *See generally* Am. Compl., Ex. B.  The authorities relied on by the plaintiff stand only for the proposition that the mortgagor has a beneficial interest in the underlying property securing the transaction, not in the deed of trust itself.  *See, e.g.*, *Democratic Cent. Comm. of Dist. of Columbia v. Wash. Metro. Area Transit Comm'n*,  21 F.3d 1145, 1153 (D.C. Cir. 1994) (observing that legal title of property held under a deed of trust lies with the trustee, while equitable title rests with the debtor).

The plaintiff also attempts to base her conversion claim on the defendants' alleged interference with her right to have the Deed of Trust returned to her once she has repaid the loan in full.  Pl.'s Opp'n at 31.  Indeed, as the plaintiff points out, courts in other jurisdiction have permitted conversion claims to proceed based on the mortgagor's refusal to return a deed of trust to the mortgagee after fully satisfying his or her loan obligations.  *See, e.g.*, *Save Charleston v. Murray*, 333 S.E.2d 60, 66 (S.C. Ct. App. 1985); *Rose v. Tilden Lumber & Mill Co.*, 14 P.2d 137, 137-38 (Cal. App. 1932).  In this case, however, the amended complaint makes clear that the plaintiff has not been satisfied her underlying debt, *see* Am. Compl. ¶ 32, and that the plaintiff has no right to the return of the Deed of Trust, *cf. Rose*, 14 P.2d at 137-38 (observing that the conversion "took place immediately upon appellant's assumption of ownership following the payment of the original obligation").  Accordingly, the plaintiff's right to have the

Deed of Trust returned upon the satisfaction of her loan obligations does not give rise to viable conversion claim.

Lastly, the court notes that "an action for conversion is recognized only when a defendant has unlawfully exercised 'ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto.'" *Kaempe v. Myers*, 367 F.3d 958, 964 (D.C. Cir. 2004) (quoting *Shea v. Fridley*, 123 A.2d 358, 361 (D.C. 1956)). "When there has been no dispossession of property rights, there can be no action for conversion." *Id.* Here, the amended complaint contains no allegations indicating that the actions taken by the defendants have dispossessed the plaintiff of any right she currently possesses in the property or the Deed of Trust. *See generally* Am. Compl. Accordingly, the plaintiff's conversion claim is deficient in this respect as well, and the court grants the defendants' motion to dismiss this claim.

### 4. Counts V, VI and VII: RICO

Counts V, VI and VII of the amended complaint set forth alternative civil RICO claims. *See* Am. Compl. ¶¶ 136-210. The thrust of these claims is that the defendants engaged in a fraudulent scheme, involving mail fraud, wire fraud and witness tampering, to misappropriate the plaintiff's interest in the Deed of Trust and unjustifiably force the foreclosure sale of her property. *See id.* Both Capital One and Prensky contend that the plaintiff has not stated a viable RICO claim because she has not pled the existence of a pattern of racketeering activity.[7] Capital One's Mot. at 20-23; Prensky's Mot. at 8-9. The plaintiff maintains that she has properly pled a pattern of racketeering activity based on her allegations of mail and wire fraud and witness

---

[7]     Capital One also argues that the plaintiff's allegations of mail fraud, wire fraud and witness tampering are too conclusory to support a RICO claim and that the plaintiff has not properly pled that she suffered injury as a result of the alleged RICO violation. Capital One's Mot. at 18-20, 23-25. Because the court dismisses the plaintiff's RICO claims based on other deficiencies pointed out by the defendants, it does not reach this additional argument.

tampering.  Pl.'s Opp'n at 37-41.

To establish a RICO violation, the plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (citing 18 U.S.C. § 1961(1)(B)).  The RICO statute defines the term "pattern of racketeering activity" as requiring the commission of at least two predicate racketeering offenses over a ten year period.  18 U.S.C. § 1961(5).  Predicate offenses satisfying the statute include acts punishable under certain state and federal criminal laws, such as mail and wire fraud.  *Id.* § 1961(1)(B).  To satisfy the "pattern of racketeering activity" requirement, the plaintiff must establish that the predicate acts "are related, and that they amount to pose a threat to continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

It is well established that a "single scheme . . . designed to frustrate one transaction and inflict[] a single, discrete injury on a small number of victims . . . fails to meet RICO's requirement of a 'pattern of racketeering activity.'"  *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1263 (D.C. Cir. 1995) (holding that the plaintiff's allegation that a tenant's association engaged in a scheme to unlawfully block the sale of a residential building complex failed to state a RICO claim  because "the scheme entail[ed] but a single discrete injury, the loss of the sale . . . suffered by a small number of victims" and that "the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim"); *see also W. Assocs. Ltd. P'ship*, 235 F.3d at 633 (affirming the dismissal of the plaintiff's RICO claims because the defendant's alleged misconduct, which included "concealing cost overruns or shifting the burden of financing them," was "more accurately characterized as a single effort to diminish the value of [the plaintiff's] partnership interest");

*Zernik v. United States*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009) (dismissing the plaintiff's civil RICO claim for failure to plead a "pattern of racketeering activity" because the plaintiff's allegations amounted to a single scheme to defraud). The plaintiff in *Zernik* alleged that the defendants violated RICO by engaging in various acts of mail and wire fraud in connection with the forced sale of the plaintiff's home at foreclosure. *Zernik*, 630 F. Supp. 2d at 26. The court dismissed the RICO claim pursuant to Rule 12(b)(6):

> Plaintiff alleges seven predicate racketeering offenses to support his claim, including collusion in robbery, mail fraud, and wire fraud. Each and every [one] of plaintiff's alleged predicate racketeering offenses, however, relates solely to the compelled sale of plaintiff's house in 2007. As such, plaintiff fails, at a minimum, to allege a pattern of racketeering activity, as his claims relate to a single alleged scheme, for which he was the sole injured party.

*Id.* at 27 (citing *W. Assocs. Ltd. P'ship*, 235 F.3d at 634).

In this case, the plaintiff has provided no factual allegations indicating the existence of an ongoing, widespread scheme on the part of the defendants to unlawfully compel the sale of homeowners in the District of Columbia. *See generally* Am. Compl. To the contrary, the plaintiff's RICO claims focus exclusively on the actions taken by the defendants to foreclose on the plaintiff's property. *See id.* ¶¶ 136-210. Although the plaintiff states in a conclusory fashion that other D.C. homeowners have been similarly victimized by the defendants, the plaintiff has identified no similar actions taken by the defendants against any other homeowners. *See generally id.*; *cf. Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) (concluding that the plaintiff had adequately pled the existence of a pattern of racketeering activity "by referencing his own experiences with Rosewood in contracting for the care of his mother and alleging in some detail that other residents and their relatives also were victimized by the identical scheme"). Accordingly, the plaintiff has not alleged the existence of a "pattern of

racketeering activity" as required for a viable RICO claim.[8]

### 5. Count VIII: Negligence

The plaintiff alleges that the defendants negligently misrepresented themselves in the Notice and the Deed of Appointment as the lender and trustee, respectively. Am. Compl. ¶¶ 211-17. The plaintiff states that she "reasonably and justifiably relied on Defendant[s'] misrepresentations and omissions to [her] detriment and paid [more] that amounts due and owing." *Id.* ¶ 218. The plaintiff further alleges that Capital One is liable for negligent supervision because it "failed to train or monitor its employees properly about the amounts due and owing for escrow payments under security instruments, and about the requirements that they adhere to the terms of those security instruments, thereby negligently allow[ing] the collection of improper and illegal insurance premiums from Plaintiff." *Id.* ¶ 221.

Capital One contends[9] that the plaintiff's negligent misrepresentation and negligent supervision claims both fail because the amended complaint contains no factual allegations indicating that Capital One proximately caused injury to her. *See* Capital One's Mot. at 25-26. The plaintiff maintains that she has pled all of the requisite elements of a negligence claim with the necessary specificity. Pl.'s Opp'n at 43.

As a general matter, a claim for negligence in the District of Columbia has four elements:

---

[8]     The authorities cited by the plaintiff do not dictate a different result. *See, e.g.*, *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1050 (7th Cir. 1998) (observing that the plaintiff would have a difficult time of establishing a RICO claim "if the predicate acts of racketeering were addressed only to a single victim for a closed-ended period of twelve to fourteen months"); *Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 26 (D.D.C. 2000) (declining to dismiss the plaintiff's RICO claims in part because the plaintiff had alleged multiple frauds against multiple borrowers clearly related in purpose and method).

[9]     Prensky does not address the plaintiff's negligence claim in his motion to dismiss, *see generally* Prensky's Mot.; Prensky's Reply, despite the fact that the amended complaint asserts a claim of negligent misrepresentation against him as well, *see* Am. Compl. ¶¶ 212-17.

(1) the defendant owed a duty to the plaintiff, (2) the defendant breached its duty, (3) and that breach was the proximate cause of (4) damages sustained by the plaintiff. *Powell v. Dist. of Columbia*, 634 A.2d 403, 406 (D.C. 1993). The plaintiff's negligent misrepresentation claim suffers from a similar to defect to the one that afflicted her fraud claim. *See supra* Part III.B.1. Namely, the plaintiff has failed to plausibly allege that the defendants' misrepresentations proximately caused any injury to her. *See* Am. Compl. ¶¶ 211-18. The plaintiff claims that the defendants negligently misrepresented themselves as the note holder and trustee in the Notice and Deed of Appointment, *id.* ¶ 215, and that as a result, the plaintiff paid amounts in excess of what she owed, *id.* ¶ 218. Yet, as previously discussed, the amended complaint indicates that the plaintiff made no additional payments to Capital One after the defendants commenced foreclosure proceedings by filing the Notice and Deed of Appointment containing the allegedly fraudulent statements at issue. *See id.* ¶¶ 32-35. Accordingly, the plaintiff has failed to adequately plead that the defendants' misrepresentations proximately resulted in her alleged injury.[10]

The plaintiff's negligent supervision claim against Capital One is equally deficient. To establish a claim of negligent supervision, the plaintiff must establish that (1) the employee behaved in a dangerous or otherwise incompetent manner, (2) the employer knew or should have known its employee's dangerous or incompetent behavior and (3) the employer, "armed with that actual or constructive knowledge, failed to adequately supervised the employee." *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001) (citing *Giles v. Shell Oil Corp.*, 487 A.2d

---

[10]     Because this deficiency equally afflicts the plaintiff's negligent misrepresentation claim against Prensky, the court dismisses the negligence claim against him as well. *See Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (observing that *sua sponte* dismissal pursuant to Rule 12(b)(6) is appropriate when it is patently obvious that the plaintiff cannot prevail based on the facts alleged in the complaint).

610, 613 (D.C. 1984)).  In this case, as previously noted, the plaintiff has provided no indication as to how Capital One's employees improperly assessed escrow charges or any other fees against the plaintiff.  *See generally* Am. Compl.; *see infra* Part III.B.1 n.4.  In addition, the amended complaint contains only the conclusory allegation that Capital One knew or should known about its employee's incompetent conduct.  *See* Am. Compl. ¶ 219; *see also Iqbal*, 129 S. Ct. at 1949.  Thus, the plaintiff's negligent supervision claim, like its negligent misrepresentation claim, fails to adequately state a claim for which relief can be granted.

### 6.  Count IX: Unconscionability, Bad Faith and Unfair Dealing

In Count IX of the amended complaint, which the plaintiff titles "unconscionability, bad faith, [and] unfair dealing," the plaintiff alleges that the defendants "used both their superior positions as a financial institution and foreclosure attorney, respectively, to take oppressive and unfair advantage of Plaintiff by filing the Forged Deed [of Appointment] and Fraudulent Notice of Sale."  Am. Compl. ¶¶ 226.  In so doing, the plaintiff alleges that the defendants "acted in bad faith."  *Id.* ¶ 227.

The defendants contend that this claim must be dismissed because claims of unconscionability, bad faith and unfair dealing require the existence of a contractual relationship between the plaintiff and the defendant, which is absent here.  Capital One's Mot. at 26-27; Prensky's Mot. at 9-10.  The plaintiff responds by asserting that the defendants' conduct was outrageous and amounts to unconscionable behavior.  Pl.'s Opp'n at 43-44.

"Liability for common law unconscionability requires two findings: 'an absence of meaningful choice on the part of one of the parties *together with contract terms which are unreasonably favorable to the other party*.'"  *Williams v. First Gov. Mortg.& Investors Corp.* 225 F.3d 738, 748 (D.C. Cir. 2000) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350

F.2d 445, 449 (D.C. Cir. 1965)) (emphasis added). Thus, the claim for unconscionability requires the existence of a contract between the plaintiff and the defendant. *See id.*

Likewise, a claim for breach of the implied covenant of good faith and fair dealing cannot exist in the absence of a contractual relationship. *See Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 627 (D.C. 1997) (concluding that because the plaintiff, "as an employee at will, not under any contract," had no basis for claiming that the defendant breached the implied covenant of good faith and fair dealing); *Brown v. Countrywide Home Loans, Inc.*, 319 B.R. 278, 290 (D.D.C. 2004) (granting summary judgment to the defendant on the plaintiff's claim that the defendant breached the implied covenant of good faith and fair dealing because "no reasonable fact-finder could determine that a contract existed between [the parties]"); *see also Choharis v. State Farm Fire & Casualty Co.*, 961 A.2d 1080, 1089 (D.C. 2008) (concluding that D.C. law does not recognize an independent tort of bad faith).

The amended complaint is devoid of any allegation indicating a contractual relationship between the plaintiff and either defendant. *See generally* Am. Compl. Indeed, as previously discussed, the plaintiff's claims are premised on the allegation that Capital One falsely held itself out as the lender in the underlying transaction, when in fact it was serving, at best, as the loan servicer. *See generally id.*; *see supra* Part III.B.1. Accordingly, the court grants the defendants' motions to dismiss this claim.

### 7. Count X: "Emotional Distress"

The plaintiff has asserted a claim of "emotional distress," through which she appears to be asserting a claim of intentional infliction of emotional distress ("IIED"). *See* Am. Compl. ¶¶ 229-34. The defendants contend that this claim should be dismissed because the amended complaint is devoid of any factual allegations suggesting a plausible claim of intentional

infliction of emotional distress.  Capital One's Mot. at 27-29; Prensky's Reply at 12 n.5.  Relying on case law preceding the Supreme Court's decisions in *Iqbal* and *Twombly*, the plaintiff maintains that dismissal of this claim is unwarranted because the defendants have not established that the plaintiff "can prove no set of facts in support of [her] claim which would entitle her to relief."  Pl.'s Opp'n at 43 (quoting *Fed. Information Systems, Corp. v. Boyd*, 753 F. Supp. 971, 974 (D.D.C. 1990)).

As a threshold matter, the court reiterates that the "no set of facts" standard on which the plaintiff relies has been abrogated by the Supreme Court's rulings in *Twombly* and *Iqbal*.  *See supra* Part III.A; *Twombly*, 550 U.S. at 562 (abrogating *Conley*, 355 U.S. at 45-46).   As previously noted, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949.  It is, therefore, not enough for the plaintiff to assert that there could be a set of facts consistent with her pleadings that would entitle her to relief.  *See* Pl.'s Opp'n at 43.  Rather, the plaintiff must plead sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.

To succeed on her IIED claim, the plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant[s] which (2) intentionally or recklessly (3) cause[d] the plaintiff severe emotional distress."  *Khan v. Parsons Global Servs. Ltd.*, 521 F.3d 421, 428 (D.C. Cir. 2008) (citing *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006)).  Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (quoting *Drejza v. Vaccaro,* 650 A.2d 1308, 1312 n.10 (D.C. 1994)).  As a general matter, a case

of IIED is made out only if "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" RESTATEMENT (SECOND) OF TORTS § 46 cmt. d.

Although the amended complaint does not specify the precise conduct on which the plaintiff grounds her IIED claim, the court presumes that she bases the claim on all of the allegations of misconduct set forth in the amended complaint: Capital One's misrepresentation that it was the holder of the note rather than the loan servicer, Capital One's improper assessment of escrow charges and other penalties and Prensky's holding himself out as the trustee under the Deed of Appointment. *See generally* Compl. This conduct, stemming from the parties' disagreements over their rights and obligations in a commercial loan transaction, does not plausibly rises to the level of "atrocious" conduct going "beyond all bounds of decency" as required to support an IIED claim.[11] *See Williams v. Fed. Nat'l Mortg. Ass'n*, 2006 WL 1774252, at *10 (D.D.C. June 26, 2006) (concluding that the plaintiff's allegations of "active, conspiratorial, malicious and secretive attempts [by the defendants] to curtail or terminate [the plaintiff's] prospective and ongoing business relationships" and the defendants' "efforts to damage her personal and business reputation all during a period when they gave false appearances of intending to do business with her" did not, as a matter of law, "rise to the level of extreme and outrageous conduct under District of Columbia law"); *see also Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005) (holding that no reasonable fact-finder could conclude that the filing of a false police complaint rose to the level of "extreme and outrageous" behavior necessary to give rise to an IIED claim under D.C. law). Accordingly, the plaintiff's allegations

---

[11]     The plaintiff's reliance on *Osbourne v. Capital City Mortg. Co.*, 667 A.2d 1321 (D.C. 1995), is misplaced. *See* Pl.'s Opp'n at 43. *Osbourne* held merely that damages for emotional distress are recoverable upon a finding of intentional misrepresentation and did not address the pleading standards governing IIED claims. *See Osbourne*, 667 A.2d at 1328.

fail to satisfy the first element necessary to state a claim for IIED under D.C. law.

Furthermore, the amended complaint contains no factual allegations indicating that the defendants acted "intentionally or recklessly" or that the plaintiff suffered "severe emotional distress" as a result of the defendants' behavior. *See Khan*, 521 F.3d at 428. The plaintiff has alleged no facts suggesting that the defendants intended to cause her emotional distress or acted recklessly in initiating foreclosure proceedings against her. *See generally* Am. Compl. Rather, the plaintiff acknowledges that she had fallen three months behind on her mortgage payments at the time the defendants initiated foreclosure proceedings and the defendants halted the foreclosure proceedings once the plaintiff commenced this action. *Id.* ¶¶ 32, 94. Likewise, although the plaintiff alleges that the defendants' conduct "inflicted severe mental anguish and emotional distress," *id.* ¶ 231, these conclusory allegations are unsupported by any factual content established that the plaintiff suffered "emotional upset 'of so acute a nature that harmful physical consequences might be not unlikely to result," *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982) (quoting *Clark v. Associated Retail Credit Men of D.C.*, 105 F.2d 62, 65 (D.C. Cir. 1939)).

For all these reasons, the plaintiff has failed to state a plausible IIED claim under D.C. law. The court therefore grants the defendants' motions to dismiss this claim.

## C. The Court Dismisses the Aforementioned Claims Without Prejudice

As described above, nearly all of the plaintiff's claims, as set forth in the amended complaint, are seriously flawed and insufficient to withstand the defendants' motions to dismiss. *See supra* Part III.B. As a result, the only claim to survive the defendants' rulings is the plaintiff's breach of fiduciary duty claim against Prensky, which Prensky did not move to dismiss. *See id.*; *see generally* Am. Compl.

Although the aforementioned claims are woefully inadequate and must be dismissed, this Circuit has cautioned that "dismissal with prejudice should be granted only when a trial court determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) (quoting *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). Because it is not entirely clear at this stage of the litigation that the plaintiff cannot remedy the deficiencies in her pleading with additional factual allegations consistent with those in her amended complaint, the court dismisses these claims without prejudice.[12]

## IV.  CONCLUSION

For the foregoing reasons, the court grants Capital One's motion to dismiss and Prensky's motion for partial dismissal. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of March, 2011.

RICARDO M. URBINA
United States District Judge

---

[12]   As noted in the foregoing analysis, the court has not addressed every alleged deficiency in the amended complaint raised by the defendants in their motions to dismiss. *See supra* Part III.B. The parties should not interpret the court's decision not to address certain arguments as any indication of the court's view of the merits of those arguments.